[No. 1617.]

THE CITY OF DENVER v. MOEWES.

1. NEGLIGENCE — CITIES AND TOWNS — PUBLIC STREETS — INSTRUCTIONS.

The duty imposed upon a municipal corporation in respect to its streets is to keep them in reasonably safe condition for travel in ordinary modes, with ordinary care, and in an action against a city an instruction that it was the duty of defendant to keep its streets, at the place where the injury was alleged to have occurred, "in good order and condition" is erroneous, as a jury might infer and understand from such instruction that it was the duty of a city at all times to keep its streets in absolutely safe condition. But such error is cured by a subsequent instruction in which the jury was told that the city was not liable if the street complained of was at the time of the accident in a reasonably safe condition for travel in ordinary modes, with ordinary care.

2. SAME.

A city is responsible only for reasonable diligence in repairing defects in its streets after the unsafe condition is known, or ought to be known to it, and in an action against a city for an injury caused by a defective street, an instruction that told the jury that defendant was liable, if the city had knowledge of the existence of the defect, or if the defect had existed for a sufficiently long time that the city or its officers ought to have known of its existence, and the city did not "promptly" repair the same, is erroneous. But such error is harmless where no question was raised as to the diligence, or want of diligence of the city in repairing the defect, but liability was sought to be avoided upon the ground of plaintiff's contributory

negligence, and there was evidence both of actual notice and also of constructive notice from the great length of time the defect had existed.

3. INSTRUCTIONS—MISLEADING—PRACTICE.

Where the objection to an instruction is that it is misleading, it is the duty of the party objecting to ask additional explanatory instructions before he can avail himself of such objection in an appellate court.

4. INSTRUCTIONS—OBJECTIONS—PRACTICE.

Where the only objection raised to an instruction on the trial of a cause is a special and specific one, he will not be allowed to. raise in an appellate court other objections not included in his specific exceptions.

*Appeal from the District Court of Arapahoe County.*

Mr. GEORGE C. NORRIS and Mr. EMERSON J. SHORT, for appellant.

Mr. OSCAR REUTER, for appellee.

WILSON, J.

This was an action brought to recover damages for personal injuries alleged to have been suffered by plaintiff through the negligent failure of the defendant city to keep one of its streets in repair. The defect or obstruction in the street complained of was a trench or gully across Fourteenth avenue near its intersection with Jefferson street, from eighteen to twenty-four inches deep, and from twelve to eighteen inches wide at the top, which was supposed to have been caused by the overflow or leakage from a large irrigation ditch near by. The plaintiff charged that while driving a coal transfer wagon along this street, he himself being in the exercise of due care and caution, he attempted to cross this trench, when by the sudden dropping of the wheels of the wagon into the trench, he was thrown from his seat, and against a stationary electric light pole at the side of the street, with great violence, thereby causing serious bodily injuries. It was further charged that there was nothing to indicate

any danger, and that in fact the gully being full of water, there was nothing to indicate the existence, even, of any trench or unusual depression.   Trial was to a jury, and verdict and judgment being in favor of the plaintiff, the defendant appeals.

The following, among other instructions to the jury, was given at the request of plaintiff :

" You are instructed that it was the duty of the city of Denver, the defendant herein, to keep its streets at the intersection of Fourteenth avenue and Jefferson street in good order and condition on and before June 8, 1894, and that the plaintiff, on said last mentioned date, and at the time he was thrown from his wagon, was lawfully on said streets and intersection and had the right to expect that said intersection was in good order and condition ; so that if you believe from the evidence that there was a gully across the whole or a part of said intersection, on or about June 8, 1894, and that the said city of Denver had knowledge of its existence, or that such gully had been there for a sufficiently long time so that the city or its proper officers might reasonably have known of its existence, and the city did not promptly repair the same, and that such gully was dangerous to persons passing along the street and crossing the same with vehicles such as the plaintiff's wagon, and that on or about June 8, 1894, the plaintiff passed along said street and over said gully with his wagon, and was unable with due and ordinary care and diligence to discover or observe the dangerous condition of said gully, and in crossing said gully used proper care to cross such a gully as it must have appeared to a person of ordinary care and diligence, and that in so passing over said gully he was thrown from his wagon by reason of the dangerous condition of said gully and was thereby hurt, bruised or injured, you must find for the plaintiff."

It is urged by defendant that there were two errors in this instruction.    In the first place, it is claimed that the court erred in declaring, as it did, that it was the duty of the defendant to keep the street in question in " good order and condition,"

on and before the time of the accident. We think that in this respect the contention of defendant is correct. The duty imposed upon a municipal corporation in respect to its streets is to keep them in reasonably safe condition for travel in ordinary modes, with ordinary care, and is by no means an insurer against all accidents which may occur. *City of Denver v. Dunsmore*, 7 Colo. 329; *City of Boulder v. Niles*, 9 Colo. 418; *Denver v. Aaron*, 6 Colo. App. 234; *Turner v. City of Newburgh*, 16 N. E. Rep. (N. Y. App.) 344; Dillon, Municipal Corporations, § 1006.

The words " good order and condition " are not synonymous with those which we have just stated as defining the duty of a city. They have a much wider signification, and, when not qualified, a jury might infer and understand that it was the duty of the city at all times to keep its streets in absolutely safe condition. A street might not be considered in " good order and condition " according to the usual and proper import of those terms, but still it might be in a reasonably safe condition for travel in ordinary modes, with the exercise of reasonable and ordinary care. The word " reasonably " may involve the consideration of many attendant circumstances, such as the nature of the country where the street is located, the character of the highway, the care usually exercised in reference to such highways, its location in the city, as for instance, whether it be in a populous or sparsely settled part, in a business or residence portion, whether it be frequently used, and what was the character of the use to which it was generally subjected. Dillon, Municipal Corporations, § 1006.

In the argument, much stress has been laid upon the other error assigned to the same instruction. It is complained that the jury were, in effect, told that the city was charged with the duty to promptly repair an alleged defect in a street, after the city had knowledge of its existence, or the circumstances were such that knowledge might be inferred. This, standing unsupported and alone, without reference to the special facts of the particular case as shown by the evi-

dence, might in some cases tend to mislead the jury. In *City of Boulder v. Niles, supra,* it was expressly declared that a municipal corporation "is responsible only for reasonable diligence to repair the defect or prevent accidents after the unsafe condition of the street is known, or ought to have been known to it, or to its officers having authority to act respecting it." "Promptly" is defined by the best lexicographers to mean "quickly," "expeditiously," and is so understood in common usage. The city might fail to repair a defect promptly, and at the same time might use such reasonable diligence in discharging the duty as would relieve it from liability for accident. In determining whether or not reasonable diligence was exercised in actions of this character, the jury are entitled to consider such attendant circumstances that might bear upon the question, and to which we have referred in our discussion of the duty with which the city is charged to keep the streets in repair. The celerity with which a city might be required to repair a defect, in order to relieve itself of liability for injuries therefrom, might be qualified by various circumstances, such as the length of time the defect had existed, its cause, the location of the street, the amount and volume of travel over it, etc. As we have intimated, however, such an expression in an instruction might not always be fatal. If the evidence showed that the defect had existed for an unreasonable length of time, and that the city had actual or constructive knowledge of it, the defect in the instruction might be wholly without prejudice.

With reference to the first error complained of, it is sufficient to say that whatever might have been its effect, it was wholly cured by the concluding part of the same instruction, and by another instruction given by the court at the request of the defendant city. In the latter, the jury was expressly told that the city was not liable if the street complained of was at the time of the accident in a reasonably safe condition for travel in ordinary modes, with ordinary care.

With regard to the second error alluded to, it would seem that it could not have mislead the jury, nor have actually

prejudiced the defendant, because the entire case appears to have been tried upon the theory by the city that the street was in a reasonably safe condition for travel, in the ordinary mode, by one in the exercise of ordinary care; in other words, no question seems to have been raised as to the diligence, or want of diligence, of the city in repairing the defect, but liability was sought to be avoided on the ground that the defect was of such a character that it could have been easily guarded against by one in the exercise of ordinary care, and that the plaintiff must of necessity have been guilty of contributory negligence which would bar his recovery. It is true, that the duty was incumbent upon plaintiff to make proof to the effect that the city had knowledge, either actual or constructive, of the existence of the defect, and had not exercised proper diligence, or the required diligence, in its repair. There was some evidence to this effect,—both that the city had actual notice, and also that such a great length of time had elapsed that it had constructive notice. It is true, this evidence was neither voluminous, nor very conclusive, but there was enough to go to the jury, and it was not disputed. However this may be, there are other and more conclusive reasons why this error in the instruction, however objectionable it might be, would not demand nor sustain a reversal of the judgment. As we have said, there is no indication appearing, from an examination of the entire record, that the jury was actually misled by this error. Under all the circumstances of the case, considering the theory upon which it was tried by apparent consent of both parties, and the evidence presented, we feel quite clear that the jury was not misled. The vice in the instruction was that it had a tendency to mislead. In such case, it was the duty of the defendant to have asked additional explanatory instructions before it could avail itself of this defect in an appellate court. 2 Thompson on Trials, § 2346; *Tramway Co. v. Lassasso*, 22 Colo. 449. This the defendant did not do.

Again, the only objection which the defendant made to the

instruction on the trial of the cause was a special and specific one.   It was in these words:

"The defendant excepts to instruction number two given by the court, for the reason that it states, in legal effect, that any defect in a street which may have caused the injury is actionable negligence, and for the further reason that there is an irreconcilable conflict between this instruction number two given by the court on request of plaintiff, and instruction number ten given by the court upon request of defendant."

Neither of these objections was tenable.   The error now complained of was not called to the attention of the trial court, and is urged for the first time in this court.   It has been repeatedly held by this court, and by the supreme court, that before a party can have alleged errors in an instruction reviewed in an appellate court, it must appear that objection to it was made in apt time in the trial court.   The reason of the rule is a sound one, and is necessary for the prompt administration of justice.   *Nisi prius* judges, in the haste which is required of them in the preparation and examination of instructions, frequently very voluminous, may inadvertently overlook an error which they would promptly rectify if it was called to their attention.   The object of this rule, therefore, is to require parties who complain of errors in instructions to make an objection to them, so that the attention of the judge may be called to it, and he given an opportunity to correct it.   *Railroad Co. v. Ryan*, 17 Colo. 104; *Wray v. Carpenter*, 16 Colo. 274.

It may be said that a mere general objection, without specifying any reasons, would be sufficient to subject the instruction to review by the appellate court.   This may be true, but we think the reason of the rule, at least, would be violated if, as in this instance, a party waived his right to make a general objection, and made a specific one, and thereafter could be allowed to raise in the appellate court other objections which were not covered by, and included in, his specific exception.   When a party makes a specific objection,

he calls the attention of the court only to those matters which are embraced in it. We think these views are expressly sustained by our supreme court in a recent case. *Car Coupler Co. v. League*, 25 Colo. 135.

Any other rule of procedure would be manifestly unfair to trial courts, and would materially tend to retard the proper dispatch of business and the due administration of justice. The public, as well as litigants, are interested in having lawsuits finally brought to a conclusion. This would be, however, a somewhat remote contingency if a party could sit by and, without objection, see a court commit a technical error, and then, if he failed on the trial, urge this error in the appellate court to secure a reversal of the judgment and a new trial. The same might occur at the next trial, and thus the process go on indefinitely, proving an endless chain. It is not unreasonable to hold that where a party makes only a specific objection to an instruction, he waives the right upon appeal to insist upon any other objections. It would, otherwise, be placing a premium on efforts to mislead. By directing the attention of the judge to certain specific objections, his attention would naturally be diverted from other portions of the instruction, and he would have a right to conclude that, as to these, there were no objections.

Possibly, if the entire instruction had been erroneous, the direction of the attention of the court to any particular portion of it might not have waived the right to have the whole reviewed, but this was not the case here. The alleged error under consideration did not permeate the entire instruction. Under the circumstances to which we have referred, and for the reasons given, we are of opinion that the defendant waived its right to complain of it in this court.

There were some further assignments of error, but they are not, in our opinion, of sufficient gravity to require a discussion. In the briefs of counsel, and in the oral argument, the errors relied upon are those to which we have given attention.

We find nothing in the record which would justify a re-

versal of the judgment, and we feel less reluctance in so holding when it appears that this cause has been three times tried, and in each, judgment was for the plaintiff. The former opinion will be withdrawn, and the judgment will be affirmed.

*Affirmed.*